BOARD OF EDUCATION OF THE CITY AND COUNTY OF SAN FRANCISCO, Appellant, v. W. H. THORPE, Respondent.

No. 718; February 5, 1866.

**Ejectment—Purchaser Pending Action—Relief from Judgment.** Where suit has been brought for the recovery of real estate, a purchaser from the defendant before any trial has been had cannot let the suit go undefended and after judgment for the plaintiff seek in equity to have the judgment annulled on the ground of surprise.

**Ejectment—Sale Pending Action—Defense by Purchaser.**— Where suit has been brought for the recovery of real estate, a purchaser from the defendant before any trial is had has no right to look to the vendor to continue the defense of the suit, since by the purchase such defense has become his own concern.

**Ejectment—Sale Pending Action—Counsel for Defendant.—** Where suit has been brought for the recovery of real estate, and a person purchases from the defendant before any trial is had, counsel employed by such defendant to defend the suit have a right to assume that they have been discharged by the sale.

**Ejectment—Sale Pending Action—Relief from Judgment.—** Where suit has been brought for the recovery of real estate and a person purchases from the defendant before trial is had, if, innocently relying on his vendor to continue defending the suit, such purchaser allows the plaintiff to take judgment, his remedy, provided he has any at all, is by motion for a new trial made within statutory time after the judgment.

APPEAL from Fourth Judicial District, San Francisco County.

SANDERSON, J.—This is an appeal from an order denying a motion to dissolve an injunction. The motion was made on the complaint and answer unaccompanied by any affidavits upon either side.

The action was brought to restrain the defendant by injunction from enforcing, by execution or otherwise, a certain judgment, which he had obtained in an action of ejectment against the plaintiff's grantors, and to open and set the same aside, or, in other words, to obtain a new trial in that action.

The facts as detailed in the complaint are substantially as follows:

An action was brought by the defendant in this case to recover the possession of the premises in question against one Donnelly, who was in possession as tenant of one Cheney, who intervened and employed counsel to defend the action. Thereafter and pending the action Cheney sold and conveyed to the present plaintiffs, who thereupon became entitled, under the sixteenth section of the Practice Act, to continue the defense of the action in the name of Cheney or to cause themselves to be substituted in his place. At the time of their purchase, which was the 4th of December, 1863, the plaintiffs had full notice of the pendency of the action, but they took no steps in regard to its further defense, and there was no covenant on the part of Cheney to further defend the title. They neither retained the counsel who had appeared for Cheney nor did they inform the city attorney of the pendency of the action, nor did they employ other counsel. In short, they took no steps

whatever to defend the action, but rested entirely upon the supposition or belief, as they allege, that the attorneys who represented Cheney would continue, after the purchase, to represent them, notwithstanding, as they admit, no request to that effect was made by them and no fee paid or offered. Some seven months after the purchase, the same being regularly on the calendar, the action was brought to trial by the plaintiff (defendant in the present case), but no one appeared on the part of the defense and the trial was altogether ex parte and resulted in favor of the plaintiff. The present plaintiffs had no actual notice or knowledge of the trial before or at the time it took place. When they learned that a trial had been had, whether in time or too late to move for a new trial, does not appear, and no reason is given why a motion for a new trial was not made.

In view of the foregoing facts, in connection with an allegation to the effect that their title is good while that of the defendant's is worthless and pretended, the plaintiffs claim the interposition of a court of equity, and allege that they are entitled to the relief sought by them on the ground of surprise.

That the complaint contains no cause of action hardly admits of debate. That it does not is manifest from the single fact, independent of the matters set out, that the complaint assigns no reason why the plaintiffs did not avail themselves of the remedy afforded by a motion for a new trial. If they were informed of the trial and judgment in time to move for a new trial, that remedy would have been all-sufficient, and that they were not informed in time is not alleged. We are compelled, therefore, to assume that they did learn it in time. Such being the case, they were bound to exhaust their legal remedies by moving for a new trial in the court of law before coming to a court of equity to obtain it. By this action the plaintiffs can obtain no relief which they could not have obtained by a motion for a new trial in the original action, for if their neglect to defend that action admits of legal excuse, full relief was attainable in that action by motion and no resort to this action was necessary. For this reason alone they cannot be allowed to maintain this action without showing that they had no opportunity to make the motion

by reason of some mistake, accident or surprise unaccompanied by any fault or negligence on their part.

But independent of the foregoing consideration, the complaint is, in our judgment, entirely destitute of equity. Courts of equity will not interfere and set aside a verdict or judgment at law on the theory of this case, except where it has been obtained by fraud or through some accident or mistake without fault or laches on the part of the party complaining, and after all remedy at law has been lost: 2 Story's Equity Jurisprudence, sec. 887 et seq. But all these grounds of equity jurisdiction are wanting in the present case. It is not pretended that the judgment in question was obtained by fraud on the part of the defendant in this action or anyone else. That the plaintiffs in this action were not prevented from making their defense by inevitable accident or mistake or excusable neglect is obvious upon a mere recitation of the facts. That their failure to defend was the result of gross inattention and negligence on their part, and not of a mistake, inadvertence or surprise, or excusable neglect, against which a court of equity will grant relief, finds, we think, a conclusive demonstration in the dry statement of the facts, which we have already given, unaccompanied by argument. The relief sought for is asked upon the sole ground that they supposed or believed, under the circumstances detailed, that the attorneys of Cheney would continue their charge and management of the case. If such was their belief, it was without any foundation in reason and opposed to every intrinsic probability. The attorneys of Cheney would have been obnoxious to the charge of impertinence had they continued in the case after their client had ceased to have any interest in the result and assumed, unretained and unasked, to manage the case for his grantees, who not only did not seek a continuance of their services, but ordinarily would not, in view of the fact that they were public functionaries and had counsel appointed by the law whose duty it was, upon their suggestion, to attend to the matter in question. With full and complete knowledge of all the facts and circumstances, the plaintiffs failed to make any provision for the defense of the estate which they acquired, and rested upon the vague notion that because the lawsuit, which they had purchased with their

17

eyes open, had been on the calendar of the court for a long time without a trial, it probably never would be tried, and upon the unfounded belief that if by chance the case should ever be brought to trial, their interests would be defended by counsel whom they had never retained and who, therefore, would have had no legal claim against them for compensation for their services. It is impossible to conceive of a case more barren of all claim to the interposition of a court of equity. The whole case made by the plaintiffs may be summed up in the forcible language of the counsel for appellant: ''They purchased a lawsuit and neglected to defend it.'' Instead of showing that they have been the victims of some fraud, accident, mistake or surprise against which ordinary prudence could not have furnished a safeguard, they show a want of prudence and care which would be inexcusable in a business man of the most limited capacity. Instead of showing that they belong to that vigilant class to whose complaints a court of equity always lends a willing ear, they have shown that they belong to that idle class of whom a court of equity will take no care, because with ample opportunity and means they fail to take care of themselves. To the complaints of this latter class a court of equity will not listen: Board of Commissioners of the Funded Debt of the City of San Jose v. Younger [29 Cal. 172], October term, 1865.

The order refusing to dissolve the injunction is reversed and the cause is remanded, with instructions to the court below to dissolve the injunction.

We concur: Sawyer, J.; Rhodes, J.; Currey, C. J.; Shafter, J.